UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DONALD L. THOMAS,<br><br>    Petitioner,<br><br>    v.<br><br>DOUG WADDINGTON,<br><br>    Respondent. | Case No. C07-5059 RJB/KLS<br><br>REPORT AND RECOMMENDATION<br><br>**NOTED FOR:**<br>**September 7, 2007** |

This 28 U.S.C. § 2254 petition for habeas corpus relief has been referred to Magistrate Judge Karen L. Strombom pursuant to 28 U.S.C. § 636 (b) and Local MJR 3 and 4. Petitioner seeks federal habeas corpus relief pursuant to 28 U.S.C. § 2254. (Dkt. # 1). Respondent has answered. (Dkt. # 12, 15). This matter is now ripe for review.

## I. INTRODUCTION

Petitioner claims the trial court violated his right to a fair trial by allowing jurors to see a written transcript of Petitioner's pretrial interview. Respondent argues that it was not error when the jurors had already listened to an audio tape of the interview, Petitioner did not object at trial and it was at his defense counsel's suggestion that the transcript be used by the jurors as a listening aid. In

REPORT AND RECOMMENDATION- 1

addition, Respondent argues that Petitioner fails to state a federal constitutional claim.[1]

## II.  BASIS OF CUSTODY

Petitioner is in the custody of the Department of Corrections pursuant to a conviction for second degree rape, committed on November 9, 2003. (Dkt. # 13, Exh. 1).  Petitioner was sentenced to a minimum term of 78 months confinement and a maximum term of life (*Id*. at 5).  His adjusted possible early release date is April 26, 2010. (*Id*., Exh. 2).

## III.  STATEMENT OF THE CASE

**A.   Statement of Facts**

The Washington Court of Appeals summarized the facts in Petitioner's case as follows:

> Donald Thomas, his girlfriend, and several others attended a night time party at a hotel, of which part included alcohol and marijuana.  Some partygoers, including B.G. and Thomas, were under age 21 years.  Other than being introduced, B.G. had no other contact with Thomas at the party.
>
> Later that evening, B.G. became inebriated, vomited, and fell asleep on one of the hotel beds.  B.G.'s friend Jennifer Wheat, Thomas (who was also inebriated), and Thomas's girlfriend slept on the same bed where B.G. was sleeping.  When B.G. first woke up, she was fully clothed, but her head hurt, she was dizzy, and she had heavy eyes.  She noticed Thomas on top of her with his legs straddled over hers.  But B.G. fell back asleep.
>
> Thomas removed B.G.'s clothes from the lower half of her body.  When someone bumped Wheat, she awoke and saw Thomas on top of another person with whom he was having sex.  Except for an arm, a leg, and a foot, Wheat was unable to see the person under Thomas.  Wheat observed that the person under Thomas was neither moving nor making a sound.  Wheat left the hotel room around 3:00 A.M.
>
> When B.G. next awoke, Thomas was on top of her engaging in sexual intercourse.  As B.G. became more awake, Thomas stopped and moved to her side.  Scared, B.G. got off the bed, put on her clothes, and went to the bathroom.  She attempted to stay awake for a period of time, but she decided to go back to sleep because she did not want her friends to ask her why she was awake or what was wrong with her.  When she returned to the bed, she slept on the far edge, away from

---

[1]Respondent answered the habeas petition and argued that contrary to Petitioner's claim, the jury did not take a copy of the transcript with it to the deliberation room. (Dkt. # 12).  After receiving Petitioner's reply brief, Respondent realized that the jury did, in fact, have an opportunity to read the transcript while the tape played during deliberation and moved to supplement its answer. (Dkt. # 15).  Petitioner did not object and the court granted the motion to amend.  (Dkt. # 17).

REPORT AND RECOMMENDATION- 2

where Thomas slept. Thomas did not attempt to have sex with B.G. again that night.

The next day, B.G. was in shock, started crying at work, left work early, and went to Wheat's house. She told Wheat's mother about what had happened the night before. Having decided that she wanted to press charges against Thomas, B.G. and Wheat's mother called the police. Wheat's mother took B.G. to St. Peter Hospital for a medical examination.

A Lacey Police Department detective brought Thomas to the station for questioning, read him his *Miranda* rights (which Thomas indicated he understood and waived), and conducted a taped interview. At the beginning of the recording, the detective again read Thomas his *Miranda* rights, and Thomas indicated that he was making his statement freely and voluntarily. Thomas was not under arrest at this time.

In his taped statement, Thomas said he remembered pulling off B.G.'s pants and underwear and then having sex with her. He did not recall who had initiated the sex. He stated that (1) B.G.'s arms were rubbing against his back; (2) from what he remembered, B.G. did not express a desire to have sex with him beforehand or say anything to him during sexual intercourse; and (3) he woke up that morning when he heard B.G. and two other girls laughing.

The State charged Thomas with second degree rape under RCW 9A.44.050(1)(b). The State and Thomas signed an agreed order (1) waiving a CrR 3.5 hearing; (2) agreeing that he had made his taped statement while not in custody and after being advised of his constitutional rights, and (3) agreeing that his statement would be admissible at trial.

During trial, the State moved to admit Thomas's taped statement. Thomas did not object. Because the tape recording was fuzzy and difficult to understand, the trial court allowed jury members to follow a written transcript as a listening aid. The trial court admitted the tape recording as Exhibit 21, but not the transcript, [which the trial court did not allow the jury to use during deliberations.][2] The jury found Thomas guilty of second degree rape.

(Dkt. # 13, Exh. 3, 1-3).

**B.     Statement of Procedural History**

Through counsel and pro se, Petitioner appealed to the Washington Court of Appeals. (*Id.*, Exh. 4, 5). The court denied his appeal in an unpublished opinion. (*Id.*, Exh. 3). It granted his motion for reconsideration only as to his request to delete part of a sentence in the facts section. (*Id.*, Exh. 8).

---

[2]On reconsideration, the Court of Appeals deleted the portion of the sentence reading "which the trial court did not allow the jury to use during deliberation." (Dkt. # 13, Exh. 8).

REPORT AND RECOMMENDATION- 3

Acting pro se, Petitioner filed a petition for review in the state's highest court. (*Id.*, Exh. 9). The Washington Supreme Court denied review without comment on October 10, 2006. (*Id.*, Exh. 10). The Court of Appeals issued its mandate nine days later. (*Id.*, Exh. 11). Petitioner did not file a post-sentence collateral attack of his sentence.

## IV.  FEDERAL HABEAS GROUNDS FOR REVIEW

Petitioner presents the following ground for review, which is summarized as follows:

> Whether the trial court violated Petitioner's right to a fair trial by allowing the jury to use a transcript of Petitioner's pretrial interview during deliberation even though the court had not admitted the transcript into evidence.

## V.  EVIDENTIARY HEARING

In habeas proceedings, an evidentiary hearing is required when the petitioner's allegations, if proven would establish the right to relief. *See, e.g., Campbell v. Wood*, 18 F.3d 662, 679 (9th Cir. 1994); *Townsend v. Sain*, 372 U.S. 293, 312 (1963), overruled on other grounds by *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992). However, an evidentiary hearing is *not* required on issues that can be resolved by reference to the state court record. *Campbell*, 18 F.3d at 679 (citing *Bashor v. Risely*, 730 F.2d 1228, 1233 (9th Cir. 1984)); *see also United States v. Moore*, 921 F.2d 207, 211 (9th Cir. 1990); *United States v. Birtle*, 792 F.2d 846, 849 (9th Cir. 1986) (evidentiary hearing is not required if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.") (quoting 28 U.S.C. § 2255).

In this case, although the state court record is silent as to what occurred during deliberations, the Court adopts Petitioner's factual summary for purposes of his habeas petition. In addition, the issue before the Court, whether the trial court erred in allowing the jury to view the transcript while listening to the taped interview during deliberations, is a question of whether the trial court erred in its discretion and an issue that may be resolved based solely on the motion, the file and the records of the case. As there is no factual dispute and, as is discussed below, Petitioner has failed to show constitutional error, no evidentiary hearing is required.

REPORT AND RECOMMENDATION- 4

## VI. LEGAL STANDARDS

**A.    Standard of Review**

Federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension. *Engle v. Isaac*, 456 U.S. 107 (1983). 28 U.S.C. § 2254 is explicit in that a federal court may entertain an application for writ of habeas corpus "only on the ground that [the petitioner] is in custody in violation of the constitution or law or treaties of the United States." 28 U.S.C. § 2254(a)(1995). The Supreme Court has stated many times that federal habeas corpus relief does not lie for errors of state law. *Lewis v. Jeffers*, 497 U.S. 764 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Estelle v. McGuire*, 502 U.S. 62 (1991).

Further, a habeas corpus petition shall not be granted with respect to any claim adjudicated on the merits in the state courts unless the adjudication either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. §2254(d).  A determination of a factual issue by a state court shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. §2254(e)(1).

**B.    Exhaustion of State Remedies**

In order to satisfy the exhaustion requirement, Petitioner's claims must have been fairly presented to the state's highest court. *Picard v. Connor*, 404 U.S. 270, 276 (1971); *Middleton v. Cupp,* 768 F.2d 1083, 1086 (9th Cir. 1985).  The record reflects that Petitioner exhausted his claim in the state court within the meaning of 28 U.S.C. § 2254(b), as he raised it in the Washington Court of Appeals and in the Supreme Court of the State of Washington.

REPORT AND RECOMMENDATION- 5

## VII. DISCUSSION

During trial, the State moved to admit Petitioner's taped pretrial statement to police. Petitioner did not object. (Dkt. # 13, Exh. 13 at 206). Because parts of the recording were difficult to understand, the prosecutor proposed that he read the questions and that Detective Barnes testify to the statements that Petitioner made in the interview. (*Id*. at 182-84). Defense counsel objected to this proposal, in part because the jury would not be able to hear Petitioner's voice and his emotions during the time he was giving the interview. (*Id*. at 184). As an alternative, defense counsel proposed that the jury be allowed to read the transcript while it listened to the tape, but that it take only the tape, not the transcript, to the jury room. (*Id*. at 184-85).

Detective Barnes then testified before the jury. She identified Exhibit 21 as the tape recording of her interview with Petitioner. Detective Barnes testified that the quality of the recording was sometimes fuzzy, and so at times it was difficult to understand. (*Id*. at 205). She identified Exhibit 21-A as the transcript of her recorded interview with Petitioner. Detective Barnes identified it as a complete transcript of the interview, but testified that in a few instances the transcriptionist had been unable to make out what was said, and that those places had been left blank. Detective Barnes further testified that she had listened carefully to the tape, comparing it to the contents of the transcript, and that Exhibit 21-A was an accurate transcript of what was on the tape recording. (*Id*. at 205-206).

The trial court admitted Exhibit 21, the tape recording, as the evidence of the interview. The trial court ordered that the jury could use copies of Exhibit 21-A as listening aids in understanding Exhibit 21. The tape was then played for the jury. (*Id*. at 206).

REPORT AND RECOMMENDATION- 6

Prior to closing arguments, the court generally instructed the jury that it was to disregard any evidence that had not been admitted. (Exh. 14 at 231).  However, there is nothing in the record to indicate that any clarifying or limiting instruction was given to the jury regarding the transcript, Exh. 21-A.

The record is also silent as to what occurred during jury deliberations.  For purposes of this report and recommendation, the Court accepts the Plaintiff's summary of what occurred after the case was given to the jury:

> After six hours into jury deliberation, the jury requested the tape player to review the tape interview, Exhibit 21.  Moments later, after receiving the tape player, the jury then requested the transcript due to the distortion of the tape interview.  The trial court then allow [sic] the jury to utilize copies of the non-admitted Exhibit 21-A.  Approximately 15 minutes later, the jury concluded their deliberation and returned a verdict of guilty.

(Dkt. # 14 at 2).

The Washington Court of Appeals reviewed Petitioner's claim that the trial court erred in allowing the jury to see the transcript of his taped interview during the trial.  Petitioner claimed that this viewing was duplicative evidence violating his constitutional rights of due process and a fair trial.  The Washington Court of Appeals disagreed:

> First, Thomas failed timely to object below; thus, he has not preserved this issue for appeal.  *See Stewart v. State*, 92 Wn.2d 285, 298, 597 P.2d 101 (1979).  Because this alleged error does not constitute a manifest constitutional error, we do not consider it.  RAP 2.5.
>
> Second, we note that even had Thomas preserved this issue for appeal, his argument would fail.  It was Thomas's own defense counsel who, for tactical reasons, requested that the jury have a copy of the transcript to use as an aid while listening to the somewhat garbled tape recording of Thomas's primarily exculpatory statement.  Use of such an aid is permissible under Washington law.  *State v. Cunningham*, 93 Wn.2d 823, 834-35, 613 P.2d 1139 (1980) citing *United States v. Turner*, 528 F.2d 143, 167-68 (9th Cir. 1975) (transcripts are allowed as a hearing aid while tapes are being played)).  Moreover, Thomas has failed to demonstrate that allowing the transcript while listening to his taped statement was error, reversible or otherwise.

REPORT AND RECOMMENDATION- 7

Affirmed.

(Dkt. # 13, Exh. 3 at 6-7).

The Washington Court of Appeals, therefore, focused on the use of the transcript during trial. Petitioner's claim here is that it was error to allow the non-admitted transcript to be used by the jury during its deliberations. However, Petitioner has failed to show how the introduction of the written transcript to the jury to review during deliberations deprived him of a fair trial.

The Ninth Circuit recognizes that juries have been permitted to have copies of transcripts during deliberations in appropriate circumstances. *See United States Koska,* 443 F.2d 1167, 1169 (2d Cir. 1971), cert. denied, 404 U.S. 852 (1971); *Chavira Gonzales v. United States,*, 314 F.2d 750, 752 (9th Cir. 1963); *see also, State v. Frazier*, 99 Wash.2d 180, 188 (1983).

Under the circumstances of this case, the trial court was well within its discretion in permitting the jury to view the transcript. Admission of accurate transcripts as an aid to tape recordings has been held to be a matter within the discretion of the trial judge. *See Fountain v. United States*, 384 F.2d 624, 632 (5th Cir. 1967), cert. denied sub nom., *Marshall v. United States*, 390 U.S. 1005 (1968) ("No good reason appears for denying the transcript to a jury which has requested it, where, as here, the jury has already heard the tape and the tape is long and cumbersome. Here the trial judge took the precaution of rendering proper limiting instructions even though the transcript was stipulated to be accurate) (cited in *Koska,* supra, 443 F.2d at 1169).

In this case, there was uncontested testimony of the transcript's accuracy. Defense counsel had suggested that the transcript be used as a listening aid to insure that the jury would be able to hear and appreciate his client's voice and emotions at the time he was giving the statement to the detective. The jury had already read the transcript and listened to the tape in court, and the jury

REPORT AND RECOMMENDATION- 8

requested the use of the transcript during deliberations in conjunction with the playing of the tape recording.

Accordingly, the undersigned recommends that the Court should deny Petitioner's habeas petition.

## VIII.  CONCLUSION

Based on the foregoing discussion, the Court should **DISMISS the petition WITH PREJUDICE**.  A proposed order accompanies this report and recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **September 7, 2007** as noted in the caption.

DATED this 3rd day of August, 2007.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION- 9